**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SHAWN CONLEY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:21-cv-01110 |
| | ) | |
| vs. | ) | |
| | ) | |
| ADAM MAGOON, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION</u>**

Plaintiff Shawn Conley ("Conley") commenced this civil action, proceeding *pro se*, against defendants Adam Magoon, Karen Feather, John Wetzel, and Malinda Adams (collectively "Defendants"). Conley claims that Defendants' actions resulted in his exposure to and contraction of COVID-19.

Pending before the Court is defendant Magoon's Motion for Reconsideration (ECF No  118) of the Court's partial denial of his Motion for Summary Judgment (ECF No. 116).  For the reasons that follow, Magoon's Motion for Reconsideration will be denied.

**I.    Relevant Procedural History**

Conley commenced this action in August 2021, claiming that Defendants violated his civil rights under 42 U.S.C. § 1983 (ECF No. 1).  In the Second Amended Complaint, which is the operative pleading, he asserts that between August of 2020 and January of 2021, Defendants neglected safety protocols and precautions that were designed as preventative measures from contracting COVID-19.

Defendants subsequently moved for summary judgment (ECF No. 96). After their motion was fully briefed, it was granted in favor of defendants Wetzel, Adams, and Feather with respect

1

to all claims asserted against them and judgment was entered in their favor and against Conley. With respect to Magoon, Defendants' motion for summary judgment was granted with respect to Conley's 14th Amendment and state law claims. At the same time, however, Magoon's motion was denied with respect to the Eighth Amendment claim asserted against him (ECF Nos. 116, 117), leaving him as the sole defendant.

On March 31, 2023, Magoon filed a Motion for Reconsideration of the Court's order (ECF No. 118) which has been fully briefed (ECF Nos. 119, 124, 125).

## II.   Standard of Review

A motion for reconsideration of an interlocutory order, such as a grant or denial of partial summary judgment, is governed by Rule 54(b) of the Federal Rules of Civil Procedure, which states in relevant part that " . . . any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."

Thus, "[t]he court may permit reconsideration whenever 'consonant with justice to do so.'" *Nyamekye v. Mitsubishi Elec. Power Prod., Inc.*, 2018 WL 3933504, at *3 (W.D. Pa. Aug. 16, 2018) (Conti, C.J.) (quoting *Qazizadeh v. Pinnacle Health Sys.*, 214 F. Supp. 3d 292, 295 (M.D. Pa. 2016)). *See also State Nat'l Ins. Co. v. County of Camden*, 824 F.3d 399, 406 & n.14 (3d Cir. 2016) ("the District Court has the inherent power to reconsider prior interlocutory orders" and to "reconsider them when it is consonant with justice to do so.").  At the same time, "as a rule courts should be loath to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice." *In re Pharmacy*

2

*Benefit Managers Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009) (quoting *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 816 (1988)).

Here, Magoon asserts that extraordinary circumstances compel reconsideration of the denial of his motion for summary judgment.

## III.   Discussion

At issue is Magoon's motion for summary judgment with respect to Conley's Eighth Amendment claim against him.  A plaintiff asserting an Eighth Amendment claim must show that: "(1) he was incarcerated under conditions posing a substantial risk of serious harm; (2) the defendant was deliberately indifferent to that substantial risk; and (3) the defendant's deliberate indifference caused the plaintiff to suffer harm." *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (citing *Farmer v. Brennan*, 511 U.S., 825, 834 (1994), *abrogated on other grounds by Bistrian v. Levi*, 912 F.3d 79, 84 (3d Cir. 2018).  Magoon asserts that he is entitled to judgment because Conley failed to proffer facts that support his claim that Magoon was deliberately indifferent and that his deliberate indifference caused harm to Conley.

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In analyzing the merits of Magoon's motion for summary judgment, the Court found that there were genuine issues of material fact that precluded judgment in his favor.  Those factual disputes are described in the Court' Memorandum Opinion issued on March 27, 2023 (ECF No. 116, pp. 6-7). Among other fact regarding alleged deliberate indifference to a substantial risk, Conley submitted the following:

- Alonzo Davis, an inmate, stated in a declaration that Magoon came to work on two

occasions while positive with COVID-19 and told this to Davis. ECF No. 110-1 at 15.

- Inmate Scheller stated in his declaration that Magoon admitted to the whole block that he was positive for COVID, bragged about it at least twice and said that he shouldn't be at work. *Id*. at 17.

- Inmate Lanko declared that Magoon came to work on November 3 and 22 despite knowing that he had COVID. *Id*. at 18.

- Conley declared that Magoon confessed that he informed the administration that he tested positive for COVID and was encouraged to come to work anyway. *Id.* at 55.

By contrast, Magoon submitted a declaration stating that he was never told to come to work if he was sick and did not tell any inmate otherwise. ECF No. 98-6, ¶ 17. Further, he declared that he only experienced symptoms of COVID-19 on November 22, 2020, tested positive and did not report to work that day. *Id.* ¶¶ 10-12. He denied telling any inmates on HB Unit that he was sick or had a positive COVID test because he did not come to work while he had COVID. *Id*. Magoon also stated that he was absent from work from October 24 to November 15, 2020, and off again November 18-19, 2020. *Id.* ¶¶ 5, 7. Of the days he worked during the month of November he was only on H Block (Conley's unit) on November 21, 2020. *Id*. ¶ 9. He was absent from work from November 22, 2020, through December 3, 2020. *Id*. ¶¶ 10, 13.

In denying Magoon's motion for summary judgment, the Court concluded that whether Magoon knowingly came to work while infected with COVID and exposed Conley to the virus could not be determined based upon the conflicting evidence in the record. ECF No. 116, pp. 25-26.

In his motion for reconsideration, Magoon asserts that he could not have been deliberately indifferent to a risk of harm to Conley because he was not at work between November 22, 2020, when he tested positive for COVID, and December 3, 2020. Magoon's motion includes his corrective declaration that reiterates that he did not work on November 2nd, 3rd or 22nd of 2022 but also states that he "did not accurately remember his work schedule" for certain other dates in November 2020. ECF No. 119-1, ¶ 2.[1]  Regarding these inconsistencies, which he confirms were unintentional, he provides a declaration by Richelle Edmonds (ECF No. 119-2), who is employed by the DOC as a timekeeper.  Edmonds states that based on Magoon's Biometric System report, which records an employee's entrance and exit from SCI-Mercer by fingerprint, Magoon was present at the prison facility on November 9, 10, 15, 16, 17, 18, 20, and 21, 2020.[2]  *Id.*

"A motion for reconsideration is not to be used to reargue matters already disposed of by the court, to get a 'second bite at the apple,' or to raise new arguments that could have been made the first time." *Michalek v. Nationwide Mut. Fire Ins. Co.,* No. CV 19-351, 2022 WL 1782503, at *2 (W.D. Pa. June 1, 2022) (citation omitted).  While the Court appreciates Magoon's candor in correcting his prior declaration, accurate information such as that supplied in the Edmonds declaration could have been provided in conjunction with Defendants' Motion for Summary Judgment. Simply put, it is nothing new. Therefore, this information cannot be characterized as supportive of an "extraordinary circumstance" that warrants reconsideration.

---

[1] Notably, Magoon states that the dates he supplied in his original declaration were "from memory."

[2] Magoon's original declaration stated that he was not at work, among other dates, on November 9, 10, 15 and 18, 2020.

Regardless, while Magoon uses this information to refute Lanko's declaration about the specific dates when Magoon was at work at SCI-Mercer, Magoon fails to proffer uncontroverted evidence that supports his request for reconsideration.  Whether he was present on November 3rd or 22nd of 2020 is not dispositive of this issue because Conley submitted contradictory evidence that Magoon told inmates that he came to work despite testing positive for COVID.[3]   Thus, Magoon has failed to demonstrate that there are no genuine issues of material fact regarding his conduct.

Magoon also argues that Conley did not prove that any deliberate indifference caused the plaintiff to suffer harm. He notes that Conley never tested positive for COVID-19 and there is nothing in Conley's medical chart reflecting that Conley complained of COVID-like symptoms. ECF No. 119, p. 4.  Further, he contends, there is no evidence that Magoon infected Conley and Conley's affidavit (ECF No. 107-1, pp. 8-9) does not provide dates relative to Conley's alleged

---

[3] Other evidence in the record includes declarations from Inmate Guaman: "My block officer from 2pm-10pm was officer Magoon, was positive for COVID-19 and was informing us about his sickness and still working and picking and choosing when to wear a mask." (ECF No. 126-2, p. 5)); Inmate Robinson: "Our block officer CO Magoon knew he was infected with the virus and joked about it was not as bad as the media made it out to be.  He touched doors, cleaning supplies, hot water fountain, and gave out trays without gloves on." (ECF No. 126-2, p. 6)); Inmate Lucas: "Mr. Magoon admitted to me and the rest of the Block that he has the COVID-19 virus and was bragging that he had the virus twice.  During the lockdown Mr. Magoon would walk around without a mask, touching our doors and passing out mail." (ECF No. 126-2, p. 11)); Inmate O'Day: "The former regular CO on HB Mr. Magoon admitted to the whole block that he was positive for COVID-19.  He even said how he shouldn't even be at work.  He was here like that for about 3 days before he took off.  He would sit up at the desk without a mask sometimes when he did his rounds he wouldn't even wear one.  This happened multiple times." (ECF No. 126-2, p. 12)); Inmate Martin: "While Officer Magoon was working our block from 6-2 he became infected with the coronavirus 19.  I know this he actually told me and other inmates this out of his own mouth. He explained he was experiencing the symptoms of COVID and that we should keep away from him.  He also was not wearing his mask properly while working on our unit and would even brag about catching it and once he got rid of it, he would then be 'immune' to the virus." (ECF No. 126-2, p. 13)).

COVID symptoms.[4]  ECF No. 119, p. 4.

As the record reflects, however, SCI-Mercer did not mass test inmates for COVID-19.  ECF No. 107-1, p. 8-9; ECF No. 98-5, ¶¶ 6, 8.  Moreover, symptomatic inmates were not tested because it was decided that no treatment beyond quarantine and palliative measures could be rendered. ECF No. 107-1, p. 8; fn 5 *supra*.  There is also some evidence that medical staff was not accepting sick call slips for these reasons.  *Id*.  Thus, the mere fact that Conley's medical chart does not reference complaints of COVID-like symptoms is not dispositive of whether he contracted COVID.  In fact, Conley's affidavit states that "[d]uring the quarantine, I along with other inmates informed different nursing staff that I had all the symptoms of COVID-19, as it was described on the institution's T.V. channel.  I had a pounding headache, I couldn't taste anything, nor smell anything, and my stomach hurt.  I filled out a sick call slip, and tried to give it to the nurse when she came around.  But she read it, and handed it back to me explaining, 'They're not going to do anything about this.  Unfortunately, Mr. Conley, everyones [sic] sick, and theirs [sic] nothing we can do for you but give you pain medication to ease your pain." ECF No. 107-1, p. 8.

Thus, whether Conley had COVID in November 2020 and how he contracted COVID remains at issue.  However, as noted in the Court's summary judgment opinion, Conley has the burden of proof at trial to demonstrate that he had COVID and that he sustained harm as a result of Magoon's conduct.

---

[4] Conley states he was ill "during the quarantine".  ECF No. 107-1, p. 8.  According to the Defendants' Concise Statement of Material Facts, HB Block was under enhanced quarantine from November 17, 2020, through December 19, 2020.  ECF No. 99, p. 3, ¶ 18; ECF No. 98-2, ¶ 18 (Declaration of Melinda Adams).  This is sufficient to suggest a time frame for Conley's COVID symptoms.

Magoon has failed to demonstrate any extraordinary circumstances that warrant reconsideration of the order denying his motion for summary judgment as to Conley's Eighth Amendment claim.  Thus, because the Court concludes that it would not be "consonant with justice" to revisit its decision, Magoon's motion will be denied.

Therefore, this 30th day of May, 2023, it is hereby ORDERED that Defendants' Motion for Reconsideration is DENIED.

BY THE COURT:


/s/ Patricia L. Dodge
PATRICIA L. DODGE
United States Magistrate Judge